UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| DANIELA RIVAS,<br><br>　　　　　　　Plaintiff,<br><br>　v.<br><br>CAESARS ENTERPRISE SERVICES, LLC;<br>DESERT PALACE, LLC,<br><br>　　　　　　　Defendants. | Case No. 2:19-cv-01637-KJD-DJA<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |

Before the Court are competing motions for summary judgment. Defendants filed their Motion for Summary Judgment (ECF #28), to which Plaintiff responded (ECF #35), and Defendants replied (ECF #43). Plaintiff filed her Motion for Partial Summary Judgment (ECF #31), to which Defendants responded (ECF #38), and Plaintiff replied (ECF #47).

I.　　Factual and Procedural Background

This case arises from Plaintiff's termination after missing shifts that she refused to work due to her religious beliefs. In September 2017, Caesars Palace hired Plaintiff Daniela Rivas ("Rivas") as a Guest Room Attendant. (ECF #28, at 8–9). When she was first hired, Rivas worked on a temporary basis. Id. at 9. She had a normal schedule, working Monday through Friday from 9:00-5:00. (ECF #31-4, at 11). Then, in February 2018, Rivas was changed to a Steady Extra Guest Room Attendant. (ECF #28, at 9). A Steady Extra is "a temporary or part-time employee . . . who is carried on the Employer's regular payroll and who may be called by the Employer to perform work in addition to, or as vacation or temporary absence replacement for regular employees." (ECF #28-4, at 4). Under the Collective Bargaining Agreement ("CBA") between Caesars Palace and the Culinary Union, which represents the guest room attendants, when a scheduling gap arises, Caesars Palace is obligated to contact Steady Extras according to a

set rotation. (ECF #28, at 8). If the Steady Extra does not answer the phone when called, or refuses to work the offered shift, then the next Steady Extra in the rotation is contacted until the shift is filled. Id. Steady Extras are permitted to refuse up to 25% of the shifts offered to them. Id. If a Steady Extra refuses more than 25% of the shifts offered them in a 60-day period, they may be terminated. Id.

Rivas applied for the position at a job fair, and on the application indicated that she could work "any day/all shifts." (ECF #28-5, at 2). In a subsequent job application, dated January 28, 2018, Rivas indicated that she was unavailable to work on Saturdays. (ECF #31-6, at 2). Rivas is a Seventh-day Adventist. (ECF #31, at 6). As part of her religious belief, Rivas observes the Sabbath as a day of rest, which requires her to abstain from secular work during that time. Id. Rivas believes the Sabbath period begins at sundown on Friday and ends at sundown on Saturday. Id. at 10.

When Rivas became a Steady Extra, she was offered shifts in the rotation provided by the CBA. Id. Some of those offerings were for shifts on the Sabbath. Id. Rivas told her supervisors that she could not work on Saturdays and procured a note from her pastor indicating as much. Id. Rivas attempted to deliver this letter to her superiors by sliding it under Neide Marzola's ("Marzola") door. Id. Rivas requested a religious accommodation in March 2018, asking if she could be skipped over or have a scheduled day off on Saturday. (ECF #28, at 9). On April 15, 2018, Rivas was called into Nidia Fulcher's ("Fulcher") office to discuss her high level of shifts rejected. (ECF #31, at 7). Fulcher's job title at the time was "Absence Integrity Advisor" and she was involved in investigating Rivas's request for religious accommodation. Id. Fulcher asked Rivas why she could not work on Saturday, and Rivas explained her beliefs regarding the Sabbath. Id. Fulcher indicated that she understood Rivas's position and did not question her sincerity. Id. Fulcher reiterated the policy that Steady Extras could only reject 25% of offered shifts before being terminated and told Rivas that she would have to speak with her superiors regarding potential accommodations. Id.

On June 1, 2018, Rivas was suspended pending investigation. Id. at 8. Rivas met with Fulcher again on June 4, 2018, for a due process meeting. Id. Rivas asked Fulcher if she could

have Saturday as a day off or if there was another job she could do that did not require working on the Sabbath. Id. During that meeting, Rivas indicated that Marzola, the supervisor to whom she had delivered the letter from her pastor, told her that shift refusals for religious reasons would still count toward the 25% and that "not even the people who is [sic] been for many year [sic] gets the Saturday off." Id. at 9. On June 13, 2018, Marzola issued Rivas a termination notice because she had exceeded the 25% allowable cap on shift refusals. Id. Rivas contends that if the shifts she had refused for religious reasons had not counted against her, she would have been below the 25% threshold. Id.

In September 2018, Rivas filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC"). (ECF #28, at 10). Rivas received a right-to-sue letter from the EEOC on August 19, 2019. (ECF #1, at 3). Rivas filed this action on September 17, 2019. Id. at 8. With discovery now complete, both parties filed competing motions for summary judgment.

## II.     Legal Standard

Summary judgment may be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. See Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of showing the absence of a genuine issue of material fact. See Celotex, 477 U.S. at 323.  The burden then shifts to the nonmoving party to set forth specific facts demonstrating a genuine factual issue for trial. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

All justifiable inferences must be viewed in the light most favorable to the nonmoving party. See Matsushita, 475 U.S. at 587.  However, the nonmoving party may not rest upon the mere allegations or denials of his or her pleadings, but he or she must produce specific facts, by affidavit or other evidentiary materials as provided by Rule 56(e), showing there is a genuine issue for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). "Where evidence is genuinely disputed on a particular issue—such as by conflicting testimony—that 'issue is

inappropriate for resolution on summary judgment.'" Zetwick v. Cnty. of Yolo, 850 F.3d 436, 441 (9th Cir. 2017) (quoting Direct Techs., LLC v. Elec. Arts, Inc., 836 F.3d 1059, 1067 (9th Cir. 2016)).

### III. Analysis

Title VII prohibits employers from terminating an employee "because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Religion, as defined by the statute, "includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business." Id. at § 2000e(j). It is an unlawful employment practice "for an employer not to make reasonable accommodations, short of undue hardship, for the religious practice of his employees." Trans World Airlines, Inc. v. Hardison, 432 U.S. 63, 74 (1976). Rivas argues that Caesars Palace discriminated against her because of her religious beliefs and failed to make reasonable accommodations.

#### A. Proper Employer

As an initial matter, Defendants argue that Rivas worked for Desert Palace, LLC ("Desert Palace") but sued Caesars Enterprise Services, LLC ("CES"). CES argues that because it was not Rivas's employer, it cannot be liable for her termination or religious discrimination. CES also argues that Rivas failed to exhaust her remedies prior to bringing suit because the Charge of Discrimination she filed was against Caesars Palace, which is not operated by CES. After the parties filed their dispositive motions, Rivas was granted leave to amend her complaint. The amended complaint names Desert Palace as a defendant. Since the amended complaint, Desert Palace has joined CES's motion for summary judgment and the parties have moved to amend or correct their filings to include Desert Palace in all arguments. Because Desert Palace, as Rivas's employer, is the proper defendant, this argument is mostly moot. However, the Court agrees with CES that it cannot be liable for employment discrimination because it was not Rivas's employer. Therefore, the claims against CES cannot survive and the Court will analyze the claims against Desert Palace only.

B.  <u>Disparate Treatment Claim</u>

To establish a claim of religious discrimination under a disparate treatment theory, a plaintiff must prove that
> (1) he is a member of a protected class; (2) he was qualified for his position; (3) he experienced an adverse employment action; and (4) similarly situated individuals outside his protected class were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination.

<u>Peterson v. Hewlett-Packard Co.</u>, 358 F.3d 599, 603 (9th Cir. 2004). If a plaintiff can establish a prima facie case of discrimination, the burden then shifts to the defendant to produce evidence that the adverse employment action was for a legitimate, non-discriminatory reason. <u>Berry v. Dep't of Social Services</u>, 447 F.3d 642, 656 (9th Cir. 2006). Then, the plaintiff is entitled to show that the employer's reason for the adverse employment action "is a pretext." <u>Id.</u> Defendant argues that Rivas has not established a prima facie case because she cannot demonstrate that she was qualified for her position or that similarly situated individuals were treated more favorably than she.

First, Rivas can show that she is a member of a protected class. She is a member of the Seventh-day Adventist church. Her pastor indicated her high level of participation in the congregation and the Court has no reason to believe otherwise. Under the statute, religion is a protected class. 42 U.S.C. § 2000e-2(a)(1). As such, Rivas has established the first element.

Second, Rivas must establish that she was qualified for her position as Steady Extra Guest Room Attendant. Desert Palace argues that she was not qualified because she could not work any time or any shift, which is an essential function of the position. Rivas argues that the essential function analysis is improper, as that is only a question in discrimination claims under the Americans with Disabilities Act. The prima facie burden of establishing that a plaintiff is qualified for his position is minimal. <u>Aragon v. Republic Silver State Disposal, Inc.</u>, 292 F.3d 654, 660 (9th Cir. 2002). A plaintiff's own self-assessment of his qualification for the position is relevant. <u>Killingsworth v. State Farm Mur. Auto. Ins. Co.</u>, No. CV 03-1950-PHX-NVW, 2005 WL 2450109, at *11 (D. Ariz. Sep. 30, 2005). Rivas has met this low burden. There is no evidence that she was not qualified for her position. Desert Palace's argument regarding the

attendance requirement is evidence of a potential non-discriminatory purpose for Rivas's termination, not evidence that she was unqualified for the position. Therefore, Rivas has established this element of her prima facie case.

Third, the parties do not dispute that there was an adverse employment action. Rivas was terminated and the parties agree that this constitutes an adverse employment action. As such, Rivas has demonstrated this element.

Fourth, Rivas must establish that similarly situated individuals outside of her protected class were treated more fairly or that other circumstances give rise to an inference of discrimination. Generally, "individuals are similarly situated when they have similar jobs and display similar conduct." Vasquez v. Cnty. of Los Angeles, 349 F.3d 634, 641 (9th Cir. 2003). Employees do not have to have identical roles to be similarly situated, but they must be similar "in all material respects." Moran v. Selig, 447 F.3d 748, 755 (9th Cir. 2006). Whether employees are similarly situated "is ordinarily a question of fact." Beck v. United Food & Commercial Workers Union Local 99, 506 F.3d 874, 885 n.5 (9th Cir. 2007). Such a determination "is a fact-intensive inquiry, and what facts are material will vary depending on the case." Hawn v. Executive Jet Management, Inc., 615 F.3d. 1151, 1157 (9th Cir. 2010). Rivas has not introduced any evidence that similarly situated individuals outside her protected class were treatly more fairly. However, she may still satisfy this prong by showing "other circumstances surrounding the adverse employment action giv[ing] rise to an inference of discrimination." Peterson, 358 F.3d at 603.

Rivas argues that Marzola, her supervisor, was unwilling to accommodate Rivas due to discriminatory animus. To support this argument, Rivas alleges that Marzola did not submit the letter Rivas slid under her door to Human Resources for over one month. The letter was written by Rivas's pastor and requested an accommodation for Rivas. Marzola indicated that Rivas "must be available for all the shifts, all week days [sic], weekends and holidays. She was hired as a STEX (Steady Extra) based on the availability she'd provided me at the time she was interviewed. If the candidate is not available, I will reject the application." (ECF #35, at 15). However, Rivas claims that during her job interview with Marzola she indicated that she could

not work Saturday and did not mark that she was available on Saturdays on the job application. This discrepancy may not be the strongest circumstance to give rise to an inference of discrimination, but it creates a question of fact. Whether Marzola knew that Rivas was unavailable to work on Saturdays prior to hiring her is unclear from the record. If she was aware, and hired her anyway, only to then require her to work on Saturdays, it could be an inference of discrimination. Because the record is unclear, the factfinder must make the determination. As such, summary judgment on this element of the claim is improper.

Rivas has established three of the four elements for her prima facie disparate treatment claim. As such, she is entitled to summary judgment on the first three elements. The fourth element requires a determination of fact by a factfinder. Therefore, summary judgment for that element is improper. Because a prima facie case has not yet been established, but could be, the Court will not analyze whether Desert Palace's reason for Rivas's termination was merely a pretext.

### C.  Failure to Accommodate Claim

To establish a religious discrimination claim for failure to accommodate, a plaintiff must show that
> (1) he had a bona fide religious belief, the practice of which conflicts with an employment duty; (2) he informed his employer of the belief and conflict; and (3) the employer discharged, threatened, or otherwise subjected him to an adverse employment action because of his inability to fulfill the job requirement.

Peterson, 358 F.3d at 606. If a plaintiff makes out the prima facie case, the burden then shifts to the defendant "to show that it initiated good faith efforts to accommodate reasonably the employee's religious practices or that it could not reasonably accommodate the employee without undue hardship." Id. (internal quotations omitted). Undue hardship occurs when it imposes more than a de minimis cost on the employer. Trans World Airlines, Inc., 432 U.S. at 84. However, "the decision of whether a particular accommodation works an undue hardship on either an employer or union must be made considering the particular factual context of each case." Tooley v. Martin-Marietta Corp., 648 F.2d. 1239, 1243 (9th Cir. 1981) (internal quotations omitted). A claim of undue hardship "cannot be supported by merely conceivable or

hypothetical hardships; instead, it must be supported by proof of actual imposition on co-workers or disruption of the work routine." Id. (internal quotations omitted). Courts are skeptical of "hypothetical hardships based on assumptions about accommodations which have never been put into practice." Anderson v. General Dynamics Convair Aerospace Division, 589 F.2d 397, 402 (9th Cir. 1978).

First, Rivas has established that she has a bona fide religious belief. Desert Palace argues that Rivas's religious beliefs may not be sincerely held because Rivas, on more than one occasion, worked during the Sabbath. Desert Palace argues that if Rivas was inconsistently applying her beliefs and willing to prioritize making money over observing the Sabbath, then her beliefs must not be sincere. The Court does not see a reason to question the sincerity of Rivas's beliefs. While she may have worked on the Sabbath before, the evidence shows that Rivas was an active member of her church who tried to apply its teachings in her life. Moreover, Rivas testified that she worked those shifts on the Sabbath because she was either specifically asked to do so or felt it was necessary to make ends meet. Perfection is not required to indicate the sincerity of a belief. As such, Rivas has established that she has a sincerely held religious belief that conflicts with her employment duty.

Desert Palace does not argue that Rivas has not established the remaining elements of her prima facie claim. Rivas's employer was aware of her religious belief and conflict and the parties agree that she was terminated because of her inability to fulfill the job requirement. Therefore, Rivas has established her prima facie case and summary judgment on that issue is proper. The burden now shifts to Desert Palace to show either that it attempted to reasonably accommodate Rivas's religious beliefs or that that any accommodation would result in undue hardship. See Balint v. Carson City, Nev., 180 F.3d 1047, 1051 (9th Cir. 1999)

Desert Palace argues that Rivas's requested accommodation would have imposed an undue hardship because it would have required Caesars Palace to violate its obligations under the CBA with the Culinary Union. It also argues that the accommodation would have imposed an undue burden on the other Steady Extra employees because if Rivas were skipped over for every Sabbath shift, the other employees would be called more frequently, either forcing them to work

those extra shifts or refuse them, which would more quickly put them closer to the 25% refusal threshold. Rivas argues that the CBA does not provide grounds to deny the accommodation because the seniority system does not "deprive another employee of a job preference or other benefit guaranteed by a bona fide seniority system or [CBA]." (ECF #31, at 16 (quoting U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, https://www.eeoc.gov/laws/guidance/section-12-religious-discrimination#_Toc203359526 (last visited August 9, 2021))). Rivas also argues that Desert Palace has not provided sufficient evidence to show that accommodation would cause a concrete undue hardship.

Desert Palace is correct that, absent a discriminatory purpose, "the operation of a seniority system cannot be an unlawful employment practice even if the system has some discriminatory consequences." Trans World Airlines, Inc., at 82. However, the existence of a seniority system does not automatically make an accommodation an undue hardship. "The Supreme Court did not hang its decision on the invincibility of seniority systems, but merely indicated that the 'special treatment' of seniority systems under Title VII supported its conclusion regarding the scope of accommodation required" and the "language of the seniority system provision is not the end of the analysis." Balint, 180 F.3d at 1053. The existence of a seniority system is not a defense to accommodation "if reasonable accommodation can be made without impact on the seniority system and with no more than a de minimis cost to the [employer]." Id. Examples of undue hardship on an employer include "additional costs in the form of lost efficiency or higher wages," or on coworkers by "depriving coworkers of seniority rights or causing coworkers to shoulder the plaintiff's share of potentially hazardous work." Id. at 1054.

By design, Steady Extras do not have set schedules. They are offered shifts when needed. Rivas requested that she simply not be offered Sabbath shifts. Desert Palace has not provided evidence of additional costs in the form of lost efficiency or higher wages and the Court disagrees with Desert Palace that it cannot offer an accommodation due to the CBA. The CBA states that "Steady Extra Board employees shall be offered a choice of all steady extra work in the order of their seniority amongst themselves." (ECF #28, at 17). The benefit granted by the

seniority system seems to only put Steady Extras in higher priority to receive calls regarding available shifts. By skipping over Rivas, it would not deprive any employee of that benefit. In fact, it would benefit the Steady Extras with less seniority than Rivas because each of them would move one spot up the seniority list, thus receiving the benefit provided by the seniority system. All the Steady Extras with more seniority than Rivas would not be impacted. Simply skipping Rivas in the rotation, to the benefit of other employees, is not more than a de minimis burden. Because accommodation could be made without impact on the seniority system, the Court cannot find that the seniority system prevents an accommodation.

Desert Palace then argues that Rivas's requested accommodation would pose an undue hardship on its schedulers and other Steady Extras. If Rivas were skipped over every time there was an available shift including a Friday night or Saturday, the other Steady Extras would be called more frequently. As such, they would be required to work more shifts, take less time off between shifts, or refuse more shifts and risk reaching the 25% threshold for termination. Rivas argues that these potential burdens on her coworkers are de minimis as there are over 100 other Steady Extras, so skipping over Rivas in the limited circumstance of an available Sabbath shift would not create an undue hardship. The Court cannot find that Rivas's requested accommodation would not result in an undue hardship on Desert Palace or Rivas's coworkers as a matter of law. The Steady Extra position is not intended to have a set schedule or set days off and the other Steady Extras may be burdened by a coworker's day off. "It is for the jury, not the Court, to decide whether these additional burdens . . . amount to an 'undue hardship.'" Dykzeul v. Charter Comms., Inc., No. CV-18-05826-DSF, 2019 WL 8198218, at *6 (C.D.Cal. Nov. 18, 2019) (citing Balint, 180 F.3d at 1055). Therefore, summary judgment regarding whether providing Rivas an accommodation resulted in an undue hardship on Desert Palace is improper but the Court grants Rivas partial summary judgment for establishing a prima facie case of failure to accommodate.

### D. Motion to Strike

Rivas has also filed a motion to strike the witness affidavit of Servando Lara ("Lara"). (ECF #32). CES submitted the affidavit in support of its motion for summary judgment that

Desert Palace has since joined. Rivas argues that CES violated Federal Rules of Civil Procedure 37(c) and 26(a) by failing to disclose Lara as a witness and then submitting a witness affidavit from a previously undisclosed witness. The argument concerns the identity of Rivas's employer. As that issue has been resolved, the Court finds that argument moot. Therefore, the motion to strike is denied.

IV. Conclusion

Accordingly, IT IS HEREBY ORDERED that Plaintiff's Motion for Partial Summary Judgment (ECF #31) is **GRANTED IN PART AND DENIED IN PART**.

IT IS FURTHER ORDERED that Defendant's Motion for Summary Judgment (ECF #28) is **DENIED**.

IT IS FURTHER ORDERED that Plaintiff's Motion to Strike (ECF #32) is **DENIED**.

IT IS FINALLY ORDERED that all pending Motions to Amend/Correct (ECF #62/63/64) are **GRANTED**.

Dated this 11th day of August, 2021.

Kent J. Dawson
United States District Judge